UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| AMBER A. NESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:12CV110-PPS |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Amber Nester filed applications with the Social Security Administration for supplemental security income benefits and disability insurance benefits. After two hearings, an Administrative Law Judge denied Nester's applications in a decision based on his finding that Nester was not under a disability within the meaning of the Social Security Act. Nester's request for review was denied by the Appeals Council, and she now brings this appeal of the final adverse determination of the Commissioner.

Although the ALJ found that Nester suffered from severe impairments, he found that they did not meet or medically equal one of the listed impairments in the Social Security regulations so as to conclusively establish disability. [DE 9 at 32, 40.] The ALJ went on to find that Nester retained the residual functional capacity (or "RFC") sufficient to perform sedentary work. [*Id.* at 36, 40.] This determination must be affirmed if "supported by substantial evidence." 42 U.S.C. §405(g). *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nester now offers several challenges to the Commissioner's adverse decision.

**The Administrative Record**

Amber Nester was born February 19, 1971. She is 5 feet, 10 inches tall and weighed as little as 311 pounds as of April 1, 2005 but over 400 pounds by January 2008. In addition to obesity, the ALJ found that Nester suffers from hypertension, hypothyroidism, sleep apnea, mild right carpal tunnel syndrome, depression and social anxiety controlled by medication. [DE 9 at 40.] Although he was persuaded that Nester is incapable of performing her past relevant work in the light-to-medium exertion category – including jobs as a cashier, fast food restaurant employee and receptionist – the ALJ found "no persuasive medical reason why the claimant could not perform sedentary work not requiring lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally" plus other limitations including not "doing more than simple, repetitive tasks; or having more than occasional contract (sic) with co-workers, supervisors or the general public." [*Id*. at 31, 36, 40.]

Nester's applications for benefits allege disability beginning October 13, 2003. Dr. Mallik Chaganti was Nester's principal treating physician from July 1, 2004 to June 3, 2008. Over this period, Dr. Chaganti treated Nester for rashes, contact dermatitis, allergic rhinitis, complaints of leg, hand and back pain, sleep apnea, and mild carpal tunnel syndrome in her right hand. He hospitalized Nester in November 2006, when she was treated for pneumococcal meningitis, bilateral mastoiditis and sphenoid sinusitis, involving an abscess in Nester's left temporal lobe. Nester was hospitalized again in November 2007 and treated for cellulitis in her left ear and otitis media, but the infection behind the ear (the mastoiditis) of the previous year did not recur.

The record contains four expressions of Dr. Chaganti's opinion that Nester is disabled and incapable of gainful employment. Two are in the form of brief letters. [DE 9 at 549, 550.] The other two involve Dr. Chaganti's completion of a form "Multiple Impairment Questionnaire" [*id.* at 571-78] and "Psychiatric/Pscyhological Impairment Questionnaire" [*id.* at 598-605], apparently provided by Nester's counsel. Together, these represent Dr. Chaganti's conclusion of mental and physical disability based upon bipolar depression, meningitis with right hearing loss and seizures, massive obesity, hypothyroidism, restless leg syndrome, psoriasis, hypertension, insomnia, foot pain, and carpal tunnel syndrome.

The ALJ found that Dr. Chaganti's disability judgments were "less than fully credible" because "these conclusions are inconsistent with his actual clinical notes involving the claimant and dating back to July 2004." [DE 9 at 37.] More specifically, the ALJ explained his discounting of Dr. Chaganti's disability opinions in some detail, observing that Dr. Chaganti's treatment notes indicated he provided "basically routine outpatient care over a period of four years," that Nester recovered within a few months from the more serious conditions that had resulted in her two hospitalizations, that Dr. Chaganti referred Nester to specialists only for periodic podiatric treatment of foot calluses, and that Nester had proved non-compliant with Dr. Chaganti's suggestions for weight loss. [*Id.*] The ALJ found that Dr. Chaganti's reliance on depression as a basis for disability was not credible because mental impairments were "outside Dr. Chaganti's area of expertise." [*Id.*]

After the initial hearing before the ALJ, Nester had a consultative orthopedic examination with Dr. Alan Morris on August 24, 2009. The results of the examination were recorded in a four-page written report [DE 9 at 742-45] as well as on a Social Security

3

questionnaire [*id.* at 746-753.]   From the SSA form, the ALJ noted Dr. Morris's report of "significant limitations in standing, walking, and sitting." [*Id*. at 35].  This refers to Dr. Morris's checking boxes and filling in blanks to indicate that Nester could, at one time without interruption, sit for 1 hour and stand or walk for 15 minutes, and that within an 8-hour work day, Nester could sit for 4 hours and stand or walk for 1 hour each. [*Id*. at 750.] For the balance of an 8-hour workday (2 hours), Dr. Morris's handwritten note suggests Nester would need to "lie supine or recline." [*Id*.]

The ALJ did "not accept Dr. Morris's report as proof of total disability," concluding that the limitations Dr. Morris noted as to standing , walking and sitting "were clearly based on his acceptance of subjective allegations by the claimant." [*Id*. at 37.] The ALJ backed up this analysis by noting that, despite having apparently emphasized pain in her left ankle during the consultation with Dr. Morris, Nester had little treatment of the ankle after the resolution of a stress fracture in June 2006. [*Id.*] The ALJ further observed that in her sessions with Dr. Chaganti over the years, Nester had "few if any complaints...about back, leg or knee pain, and there was never any x-ray or other evidence of specific arthritis or vascular disease in any of those areas." [*Id.*]

### ALJ's Weighing of Medical Evidence

In this appeal, Nester argues that the ALJ failed to properly weigh the opinions of Dr. Chaganti and Dr. Morris because, after indicating that he found them less than fully credible or controlling, the ALJ failed to indicate what weight he gave to their opinions.  An ALJ must give a treating physician's opinion controlling weight where the opinion is well supported by medical findings and is consistent with substantial evidence in the record.  *Larson v. Astrue*, 615 F.3d

4

744, 749 (7th Cir. 2010); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Hofslien v. Barnhart*, 429 F.3d 375, 376 (7th Cir. 2006). But where a treating physician's opinion fails these standards, the ALJ may discount it so long as he offers "good reasons" for doing so. *Larson*, 615 F.3d at 749, citing what is now 20 C.F.R. §404.1527(c). Even where the ALJ articulates good reasons for rejecting a treating physician's opinion, he must determine what weight if any the opinion is due, considering various factors identified in the regulations, including the length, nature and extent of the treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion. *Larson*, 615 F.3d at 751; *Campbell*, 627 F.3d at 308.

With respect to Dr. Chaganti's opinion, the ALJ's explanation of his rejection of the disability conclusion clearly offers good reasons, and ones which are among the regulatory factors, namely the physician's specialty, the length, nature and extent of Nester's treatment by Dr. Chaganti, and the lack of consistency and support in the medical record for a conclusion that Nester was disabled by the conditions cited by Dr. Chaganti.

Dr. Morris was not a treating physician but one consulted after the initial administrative hearing. A consultative opinion is not entitled to the same presumption of controlling weight. Although he examined Nester, Dr. Morris did not have a treatment relationship with Nester, and his opinion therefore lacks a "detailed, longitudinal picture of [her] medical impairment(s)." 20 C.F.R. § 404.1527(c)(2). The regulatory factors nonetheless applicable to administrative consideration of a consultant's opinion are: its supportability by relevant evidence, particularly medical signs and laboratory findings; its consistency with the record as a whole; and the specialization of the physician. §404.1527(c)(3), (4) and (5). The ALJ articulated sound reasons

5

for his analysis of Dr. Morris's opinions, applying these factors. The conclusions the ALJ rejected, concerning limitations on Nester's walking, standing and sitting, were found to be inconsistent with the record of Nester's long on-going treatment by Dr. Chaganti, the lack of treatment of Nester's left ankle after June 2006, and the lack of objective x-ray or other evidence of arthritis or vascular disease in Nester's back, legs or knees.

Nester's arguments invite me to undertake my own review of the medical records to reconsider the persuasiveness of the ALJ's analysis. But that is not my role. Courts are not to "reweigh the evidence or substitute our judgment for that of the ALJ's." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). Instead, I must affirm the ALJ's decision where it is supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted). The ALJ adequately explained good reasons for discrediting the disability conclusions of Dr. Chaganti and Dr. Morris, and those reasons reflected consideration of the relevant factors enumerated in 20 C.F.R. §404.1527(c).[1]

Further, Nester suggests that the ALJ failed to credit a single medical opinion and so must have determined Nester's RFC by an impermissible reliance on his own lay interpretation of the medical data. It is true that an ALJ cannot disregard medical evidence and substitute his own unqualified opinion. *Larson*, 615 F.3d at 749; *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir

---

[1] Nester's administrative hearing took place in Missouri where Nester was then living. Although the Missouri ALJ may be unfamiliar with the Seventh Circuit's caselaw interpreting the applicable regulations, his opinion evinces his consideration and application of the same regulatory rubric.

. 2007). But neither is an ALJ "required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Likewise, an ALJ need not undertake a written evaluation of every piece of evidence and scrap of testimony. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

Furthermore, as the SSA points out, the RFC is not itself a medical opinion but a legal determination, and an issue reserved to the Commissioner. 20 C.F.R. §§404.1546(c), 404.1527(d)(2). The RFC is the ALJ's ultimate finding, based on consideration of the entire record (including all medical opinions), as to what an individual can do despite her impairments. Social Security Rule 96-5p, 1996 WL 374183, *4 (1996). In any event, it is not true that here the ALJ rejected all medical opinions in determining the RFC. The ALJ's analysis clearly reflects consideration of the medical record, and with respect to the particulars of the RFC itself, the ALJ cites the reports of state agency doctors who offered opinions as to Nester's limitations based on her medical history. [DE 9 at 36.] I find no ground for reversal and/or remand in Nester's challenges to the ALJ's weighing of the medical evidence.

**ALJ's Evaluation of Claimant Nester's "Credibility"**

Nester next contends that the ALJ failed to adequately evaluate her "credibility." [DE 12 at 22.] In particular, Nester complains about the ALJ's general statement that Nester's "allegation of impairments, either singly or in combination, producing symptoms and limitations of sufficient severity to prevent the performance of all sustained work activity is not credible." [DE 9 at 39.] Nester attempts to seize on cases in the Seventh Circuit that are highly critical of boilerplate references to credibility. *See e.g. Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir.

7

2010) (describing similar language used by ALJs as "meaningless boilerplate"). But this statement by the ALJ did not discount Nester's credibility as a *witness*. The ALJ was not, for example, rejecting any particular assertion or claim by Nester, such as concerning pain (a frequent subject of credibility issues) or particular capabilities. Instead, the language spawning this issue merely amounts to a restatement of the ALJ's overall conclusion rejecting Nester's claim of disability.

Ironically, immediately after citing the ALJ's finding that Nester's allegation of disability is not "credible," Nester goes on to review some of the evidence the ALJ then cited for his determination that Nester's various conditions, though real, were not disabling. [*Id*.] This supports rather than detracts from the "substantial evidence" needed to affirm the ALJ's decision. Rather than identify any actual credibility determinations the ALJ made concerning Nester's testimony, Nester again attempts – under the guise of a credibility assessment challenge – to induce a reweighing of the record on various issues in hopes of convincing me of a different conclusion than that reached by the ALJ. As I've already indicated, I cannot engage in that kind of reweighing of the evidence. *Pepper*, 712 F.3d at 362.

Combing through this section of Nester's brief yields only a few particular conclusions by the ALJ to which I can consider an articulable challenge. Nester's nutshell on the law governing an ALJ's assessment of the credibility of subjective complaints of pain [DE 12 at 22] is a red herring, as pain was little mentioned in Nester's testimony before the ALJ. Pain is largely a non-issue in the ALJ's decision and Nester does not now argue that Nester has disabling pain. Instead, Nester merely challenges one statement in the ALJ's decision concerning pain:

8

> "The claimant does not have most of the signs typically associated with chronic, severe musculoskeletal pain such as muscle atrophy, persistent or frequently recurring muscle spasms, obvious or consistently reproducible neurological deficits (motor, sensory, or reflex loss) or other signs of nerve root impingement, significantly abnormal x-rays or other diagnostic tests, positive straight leg raising, persistent inflammatory signs (heat, redness, swelling, etc.), or bowel or bladder dysfunction."

[DE 9 at 38.] Nester challenges this as "lay judgment" concerning medical findings and "not substantial evidence." [DE 12 at 23.] But the ALJ's detailed statement represents his consideration whether any claimed pain *is supported by* the objective medical evidence, just as Nester herself acknowledges is required.

In any event, Nester does not now and has not previously claimed that she experiences disabling pain. Her strategy instead is merely to find fault with the ALJ's analysis without regard to the relative insignificance of the issue to the overall disability determination, but any error is harmless if Nester would nonetheless not be entitled to a finding of disability. Dr. Chaganti himself, with Nester's disability application in mind, has indicated that pain is not among Nester's issues. In his Multiple Impairment Questionnaire, Dr. Chaganti was asked to list Nester's "primary symptoms, including pain, [etc.]." [DE 9 at 572.] His response did not include pain. On the same page, in answer to a question specifically about pain, the doctor wrote "no pain" and as to sub-parts inquiring about the nature, location, frequency, precipitating factors and other facts relating to any pain, he wrote "NA" clearly signifying "not applicable." [*Id.*]

I am mindful that the harmless error doctrine must be construed narrowly. As the Seventh Circuit has repeatedly admonished, "[T]he harmless error standard is not... an exercise in rationalizing the ALJ's decision and substituting [the court's] own hypothetical explanations for the ALJ's inadequate articulation." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011);

9

*accord Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). But the harmless error principle applies here to the ALJ's assessment of pain where the claimant's own treating physician has plainly stated it is not an issue.

As to Nester's mental condition, in addition to offering another unavailing rival analysis of the evidence, Nester makes one challenge to a specific finding of the ALJ, criticizing as "highly inappropriate" the ALJ's observation that "[a]t the hearing in May 2009 the claimant displayed no obvious signs of depression, anxiety, memory loss, or other mental disturbance." [DE 9 at 38.] Even in the primary case upon that Nester relies upon, the Seventh Circuit noted some misgivings about a "sit and squirm" test for the assessment of pain but nonetheless continued to endorse "the role of observation in determining credibility" on the issue. *Powers v. Apfel*, 207 F.3d 432, 436 (7th Cir. 2000). Where the ALJ had an extended opportunity to observe the claimant and consider her demeanor and bearing, as relevant both to her frankness and honesty and to whether she was experiencing severe pain, and made a credibility determination based on both that and other factors as well, the Court could not find that judgment "patently wrong." *Id*.

Likewise in this case, the ALJ's conclusions about Nester's depression or social anxiety and their contribution toward her claimed disability were not based exclusively on his armchair assessment of Nester's presentation at the hearing. The ALJ's decision identifies other factors including: Nester's sporadic treatment history; her reliance on self-reported mood swings and stress intolerance that were not often noted by any treating professionals; and the evidence demonstrating a lack of impact on Nester's past jobs, on her daily habits and activities, and on her effective intelligence, thought processes and judgment over any extended period of time. [DE

10

9 at 38.] Nester fails to demonstrate that the ALJ's assessment of her depression was not supported by substantial evidence or was patently wrong as a mere "credibility" determination.

### ALJ's Reliance on Flawed Vocational Expert Testimony

The final issue on appeal concerns the ALJ's reliance upon flawed vocational expert testimony. Under this heading, Nester challenges the ALJ's residual functional capacity determination as "nothing but his impermissible lay interpretation of the medical record," chiefly because it omitted desired limitations of up to three medical absences from work per month and an inability to tolerate even low stress. [DE 12 at 25.] I have earlier determined that the ALJ's RFC findings were supported by substantial evidence. Again I note that it would be inappropriate for me to reweigh the evidence to determine if I would have been persuaded to include these elements in the RFC – worded just this way – as Nester would have wished. *See supra* pp. 6-7. I am not at liberty to reevaluate conflicting evidence or override the ALJ's decision with my own judgment as long as reasonable minds could differ on the outcome of the decision. *Lee v. Sullivan*, 988 F. 2d 789, 793-94 (7th Cir. 1993).

In addition, Nester contends that the ALJ found that she had moderate limitations in maintaining social functioning and in maintaining concentration, persistence or pace, but omitted these limitations from the hypothetical posed to the vocational expert. [*Id.*] These findings were translated to a workplace setting and adequately covered by the portions of the hypothetical limiting plaintiff to no more than occasional interaction with co-workers, supervisors or the public, and to the performance of only simple, repetitive tasks. Although the precise language was not repeated, the substance of the limitations was incorporated into the hypothetical presented to the vocational expert. This does not require a remand.

The hypothetical posed to the vocational expert must "incorporate" all the functional limitations the ALJ determines, including those in the areas of social functioning and of concentration, persistence, or pace. *Warner v. Astrue*, 880 F.Supp.2d 935, 941 (N.D.Ind. 2012) "At bottom, 'an ALJ is free to formulate his mental residual functional capacity assessment in terms such as "able to perform simple, routine, repetitive work" so long as the record adequately supports that conclusion.'" *Id.* at 944. Although the Seventh Circuit requires that the ALJ "orient the VE to the totality of a claimant's limitations," including deficiencies of concentration, persistence and pace, the Court has not "insisted, however, on a per se requirement that this specific terminology...be used in the hypothetical in all cases." *O'Connoer-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010).

One instance in which the exact terminology has not been required in the hypothetical is where "the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations." *Id*. Here the ALJ testified that he had "reviewed the exhibits in the file" and so appears to have reviewed Nester's medical record. [DE 9 at 826.] Another instance in which the Seventh Circuit has found express reference to concentration, persistence and pace not to have been necessary in the ALJ's hypothetical is where "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619. Here the ALJ's finding was that Nester "has no marked deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner in work settings or elsewhere so long as she restricts herself to simple, repetitive tasks." [DE 9 at 39.] The ALJ's statement of the hypothetical was entirely consistent with, and accurately

incorporated the ALJ's finding as to Nester's limitations in this regard, when it limited Nester to simple, repetitive tasks.

Nester's "no more than moderate limitations in maintaining social functioning" were also adequately incorporated in the hypothetical's limitation to only occasional interaction with supervisors or the public. [DE 9 at 39, 329.]   In *Hofslien v. Barnhart*, the Seventh Circuit found that hypotheticals posing limitations to "simple, repetitive work, involving no more than minimal contact with the public, supervisors, or co-workers" sufficiently captured what the ALJ had determined to be the claimant's limitations in maintaining social functioning.  172 Fed.Appx. 116, 119-20, 2006 WL 470178 at **3 (7th Cir. 2006). If the ALJ's hypothetical correctly reflected the limitations required by his RFC determination, even if not by use of the regulatory language describing the four "broad functional areas" of limitation in 20 C.F.R. §416.920a(c)(3), "[n]othing more was required." *Id*. at 120.  The same is true here.

After reviewing the entire medical record and all other evidence, the ALJ concluded that "[t]he claimant's basic abilities to think, understand, communicate, concentrate, get along with other people, and handle normal work stress have never been significantly impaired on any credible documented long-term basis." [DE 9 at 38.] The most recent medical information on the subject noted by the ALJ was the result of a post-hearing consultative psychological examination by Carmen Curtis, Ph.D. on August 24, 2009.  Dr. Curtis "did not believe the claimant to have separate social anxiety, but said that instead that that was probably another symptom of depression.  She indicated moderate restrictions in terms of social interaction and stress tolerance and work adaptations, but indicated a moderately restrictive GAF of 57." [DE 9 at 35-6.] In formulating the RFC and its expression in the hypothetical, the ALJ credited Dr. Curtis's

assessment of Nester's GAF, and noted that such a score "would still allow the claimant to do the jobs the vocational expert identified." [*Id.* at 38.] The record adequately supported these conclusions, and the hypothetical's expression of Nester's social functioning limitations was sufficient.

## Conclusion

After a careful review of the parties' briefs, the medical records, the ALJ hearing testimony, and the ALJ's decision, I have concluded that substantial evidence in the record supports the ALJ's finding that Nester is not disabled.

ACCORDINGLY:

The final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and for supplemental security income benefits under Titles II and XVI of the Social Security Act is AFFIRMED.

The Clerk shall enter judgment accordingly.

**SO ORDERED**.

ENTERED: August 27, 2013.

       /s/ Philip P. Simon
       PHILIP P. SIMON, CHIEF JUDGE
       UNITED STATES DISTRICT COURT